JOHN WESLEY HILL, Indiv. and as Adm'r of the Estate of Lena Mae Hill, Deceased, Plaintiff-Appellant, *v.* LUTHERAN HOSPITAL *et al.*, Defendants.— (THOMAS J. DURKIN, M. D., Defendant-Appellee.)

Third District   No. 77-397

Opinion filed April 11, 1978.

Dircks, Ridenour, Davis & Shinkle, P. C. and James W. Berry, both of Davenport, Iowa, and Anna I. Shinkle, of Des Moines, Iowa (W. Michael Shinkle, of counsel), for appellant.

John V. Patton and James D. Mowen, both of Bozeman, Neighbour, Patton & Noe, of Moline, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Rock Island County granting summary judgment in favor of defendant Thomas J. Durkin, M. D. The action was instituted by plaintiff, John Wesley Hill, for damages occasioned by the alleged negligence of defendants, Thomas J. Durkin, M. D. and Lutheran Hospital, in the treatment of plaintiff's wife, Lena Mae Hill, who died in the course of childbirth.

Plaintiff, on November 28, 1975, filed the complaint in this cause which alleged that defendants Durkin and Lutheran Hospital were negligent during the treatment of his wife, while she was giving birth to a child, as a result of which the said Lena Mae Hill, wife of plaintiff, died. The record discloses that on November 29, 1973, Lena Mae Hill was admitted to defendant Lutheran Hospital, under care of defendant Durkin, and that on November 30, 1973, subsequent to the birth of a child by "spontaneous frank breech delivery," Lena Mae Hill died of shock of undetermined cause.

On November 26, 1976, defendant Durkin filed a motion for summary judgment supported by the affidavit of defendant Durkin. Hearing on the motion for summary judgment was initially set for December 10, 1976. Plaintiff, however, was granted a continuance for the purpose of completing discovery and for filing of affidavits in opposition to the motion for summary judgment. After some continuances, hearing on the motion was finally set for April 29, 1977. In answers to interrogatories filed on March 15, 1976, plaintiff set forth that no expert had been retained at that time to testify in the cause. On September 27, 1976, the plaintiff filed a supplementary answer to the supplementary interrogatory, where he stated that at that time no medical opinion had been obtained by plaintiff concerning the alleged acts of negligence in the complaint against Dr. Durkin. Plaintiff further answered, on November 6, 1976, by stating that at that time no medical opinion had been obtained concerning the negligent acts alleged in the complaint.

As we have indicated, the motion for summary judgment was filed on November 26, 1976, by defendant Durkin, supported by his affidavit. While that motion was scheduled for hearing on December 10, 1976, at the request of plaintiff (on December 8, 1976) the hearing was continued to permit discovery by plaintiff and to give plaintiff additional time to file affidavits or pleadings to meet the motion for summary judgment. That motion was supported by plaintiff's counsel's affidavit. All of the records in the possession or control of Dr. Durkin, and his personal attorney, were forwarded to plaintiff's attorney on December 10, 1976, and defendant Durkin filed answer to interrogatories on February 1, 1977. Dr. Durkin's motion for summary judgment was thereafter scheduled for hearing on February 24, 1977, but was then continued until March 8, 1977. On March 7, 1977, plaintiff filed a motion to strike and a motion to dismiss the motion for summary judgment. At the March 8, 1977, hearing, an order was entered setting forth that the motion for summary judgment was heard and taken under advisement until April 29, 1977. The motion to strike Dr. Durkin's affidavit, filed by plaintiff, was denied, and plaintiff was granted leave to file counter-affidavits on or before April 15, 1977. On April 4, 1977, Dr. Durkin's discovery deposition was scheduled and taken. By April 15, 1977, plaintiff had not filed counteraffidavits to the motion for summary judgment. At the next scheduled hearing on April 29, 1977, plaintiff requested a further continuance asserting he desired to obtain other and different counsel. Following that hearing, the court granted plaintiff's motion for continuance and continued the cause until May 25, 1977, and granted plaintiff an extension until May 25, 1977, to file counteraffidavits. The motion for summary judgment filed by Dr. Durkin originally on November 26, 1976, and taken under advisement on March 8, 1977, was allowed on May 25, 1977. Plaintiff appeared at such hearing *pro se* and stated that he had been unable to obtain new counsel and requested dismissal of the Durkin motion. The summary judgment was filed only on behalf of defendant Durkin. Defendant Lutheran Hospital is not involved in the appeal now under consideration.

On appeal in this court, plaintiff contends that the trial court erred in granting summary judgment in favor of defendant Durkin and asserts that there were genuine issues of material fact in the affidavits and pleadings on file in the cause. We recognize that summary judgment is properly granted where there is no genuine issue as to any material fact and that the court is to determine the existence or absence of a genuine issue as to any material facts from the affidavits, depositions, admissions, exhibits and pleadings in the case. As stated in *Lewis v. Illinois Institute of Technology* (1st Dist. 1977), 50 Ill. App. 3d 418, 420, 365 N.E.2d 1079:

> "A court has the duty to construe evidence strictly against the moving party and liberally in favor of the opponent, [citations] and it is well settled that the right to summary judgment must be

free from doubt and determinable solely as a question of law [citations]."

As stated in *Presto Manufacturing Co. v. Formetal Engineering Co.* (1st Dist. 1977), 46 Ill. App. 3d 7, 10, 360 N.E.2d 510:

"* * * if the facts admit of more than one conclusion or inference, including one unfavorable to the moving party, the motion for summary judgment should be denied."

In the instant case, the documents on file at the time of the granting of the motion for summary judgment by the trial court, included pleadings, interrogatories answered by plaintiff, interrogatories answered by defendant Durkin, an affidavit of plaintiff's trial counsel, and an affidavit of defendant Durkin in support of his motion for summary judgment. It was apparent from the affidavits that, at the time of her death, Lena Mae Hill was obese and multiparied, and that she had just given birth to her seventh child. The record shows that the child born to Lena Mae Hill on November 30, 1973, was delivered in the frank breech position (*i.e.*, sacrum first delivery), rather than the normal head first delivery. It is also noted that subsequent to the delivery of the child on November 30, 1973, it became apparent to defendant Durkin, who had delivered the child, that Lena Mae Hill had developed a problem which Durkin diagnosed as a rupture of the uterus, and that defendant states, in his affidavit, that he then undertook measures to cope with such condition, which he asserted he did in accordance with the standards of practice applicable to such situation.

■■ The standards for imposition for liability in medical malpractice cases are outlined in *Scardina v. Colletti* (1st Dist. 1965), 63 Ill. App. 2d 481, 488, 211 N.E.2d 762:

"In a malpractice action a physician will be held responsible for injuries resulting from his want of reasonable care, skill and diligence in his practice. The plaintiff must prove by affirmative evidence that the defendant was unskillful or negligent and that his want of skill or care caused injury to the plaintiff. It is not enough to prove that he made a mistake or that his treatment harmed the plaintiff; proof of a bad result or mishap is no evidence of lack of skill or negligence.

Generally, it is necessary for a plaintiff to show by expert testimony not only that the injury occurred, but that such an event does not ordinarily occur in the normal course of events without negligence. [Citations.] The so-called 'common knowledge' and 'gross negligence' exceptions to the requirement of expert testimony are applicable if the negligence of the physician is so grossly apparent or the treatment is such a common occurrence

that a layman would have no difficulty in appraising it." Accord, *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301.

In the instant case, the only expert opinion presented by the record for consideration on the motion for summary judgment was an affidavit filed by defendant Durkin, as a medical expert, in support of his motion for summary judgment. Plaintiff filed no affidavits from medical experts in opposition to the motion for summary judgment, but did indicate in answers to interrogatories prepared by his trial counsel that he had consulted with a physician with respect to the acts or omissions of defendant Durkin (but that plaintiff had not obtained an expert medical opinion on such acts or asserted omissions). Counsel for plaintiff, on appeal, do not contest the rule that, at the trial, plaintiff would be required to prove the negligence of defendant through the use of medical expert testimony. Plaintiff argues on appeal, however, that summary judgment should be granted in medical negligence actions only in limited situations, and that in the instant case, the sole expert affidavit of defendant Durkin was insufficient to support the granting of summary judgment.

■■ Both parties cite *Sanders v. Frost* (5th Dist. 1969), 112 Ill. App. 2d 234, 241, 251 N.E.2d 105, where the Illinois Appellate Court said:

"It is apparent that the charges in plaintiff's complaint concerning defendants' lack of skill and care in the treatment of plaintiff required more than common knowledge and experience to understand and thus were not within the common comprehension of laymen. (Citation.) Since plaintiff failed to indicate that he had expert medical opinion to sustain the charges in his complaint, or that he would be able to obtain such opinion in the future, the trial court correctly entered a summary judgment in favor of the defendants.

The proving of negligence in medical malpractice cases usually depends upon the ability of the plaintiff to secure the services of a member of the medical profession to give expert testimony as to the proper method of treatment in the particular case. The reluctance of the members of the medical profession to testify against a fellow disciple of Aesculapius makes the search for a medical expert very difficult in most cases and well-nigh impossible in some cases. For this reason the trial courts should be extremely cautious in entering summary judgment in this type of case.

Here, however, plaintiff did not urge in the trial court, nor does he urge in this court, that he has, intends to, or may be able to prove his case by expert testimony."

So far as the record is concerned in this case, plaintiff failed to indicate

that he has or expects to obtain expert medical testimony or that he will be able to obtain such testimony. Under the precedent of *Sanders v. Frost*, in view of the record with extensive continuances and opportunity availed to plaintiff to obtain expert medical testimony or, indicate that he will be able to obtain it, we believe, pursuant to the rule recited in *Sanders v. Frost*, that summary judgment may be granted in the instant medical malpractice case. We agree that if there is any sound basis to do so, a trial court should reject summary judgment in this type of case. Where, however, the record indicates that plaintiff has every opportunity to establish his case and has failed to demonstrate that he could show negligent acts or omissions by defendant by expert medical testimony, where the issue is clearly one which cannot be determined by laymen alone, summary judgment could be allowed. In argument of this case, an implication was made that, perhaps, if the cause was permitted to go to trial, some evidence could be developed from the defendant Durkin, on his examination as an adverse witness, which would raise a question of fact as to the negligence of Dr. Durkin under the circumstances. The record, however, indicates that Dr. Durkin made affirmative statements that there was no negligence in his procedure in the case. Also, plaintiff had ample opportunity, in taking the deposition of Dr. Durkin, to examine him extensively in an effort to show some negligence on his part which would raise an issue of fact in this cause. On the record in this case, therefore, as was determined in the *Sanders v. Frost* case, we do not believe that the trial court committed reversible error in granting summary judgment in this cause.

■■ In the affidavit filed by original counsel for plaintiff, in conjunction with plaintiff's motion for a continuance of the hearing on the motion for summary judgment, the attorney simply stated that a certain nurse was in attendance at the time of the birth of the child to Mrs. Hill and could testify with respect to the procedures at that time. Nothing in the affidavit indicates specifically that there were any procedures which could support the complaint charges of negligence by defendant Durkin. The facts stated were not within the personal knowledge of plaintiff's counsel, and there is no record, either by affidavit or otherwise, that the testimony of the nurse would support the case of plaintiff. The affidavit, therefore, could not be construed as raising a question of fact, in answer to the motion for summary judgment. *Standard Oil Co. v. Lachenmyer* (1st Dist. 1972), 6 Ill. App. 3d 356, 285 N.E.2d 497.

We have been urged by counsel to establish a rule that an affidavit of a physician-defendant, on a specific issue of malpractice or negligence in connection with the treatment of a patient, should not be considered, and that a motion for summary judgment supported only by such affidavit should not be granted. No support for such rule in the State of Illinois has

been cited by plaintiff. We do not believe that we are authorized to reject the affidavit of a party to the case who is present at the time of the alleged negligence and who is charged with such negligence. We agree with the court in *Sanders v. Frost*, which we have quoted in the course of this opinion, that great caution should be exercised in granting summary judgment in negligence cases or malpractice cases involving negligence, but in view of the record made in the instant case and the opportunities afforded plaintiff to present some evidence that plaintiff would be able to offer or reasonably establish that plaintiff would be able to present testimony from an expert which would tend to show some negligence on part of defendant Durkin, we cannot say that the trial court acted improperly in granting the motion for summary judgment in the instant case.

For the reasons stated, therefore, the judgment of the Circuit Court of Rock Island County is affirmed.

Affirmed.

BARRY, P. J., and SCOTT, J., concur.