JANINE HANSBROUGH *et al.*, Plaintiffs-Appellants, v. DR. E. P. KOSYAK *et al.*, Defendants-Appellees (Dr. R. Franklin Roller, Defendant).

Fourth District   No. 4—85—0481

Opinion filed February 27, 1986.

540

John B. Jenkins, of Gunn & Hickman, P.C., of Danville, for appellants.

Edward M. Wagner, of Heyl, Royster, Voelker & Allen, of Urbana, for appellee Hoopeston Community Memorial Hospital.

Richard F. Record, Jr., and Richard C. Hayden, both of Craig & Craig, of Mattoon, for appellee E. P. Kosyak.

JUSTICE MORTHLAND delivered the opinion of the court:

Plaintiffs appeal orders of the circuit court of Vermilion County striking the affidavit of their expert witness and granting summary judgment in favor of defendants Dr. E. P. Kosyak and the Hoopeston Community Memorial Hospital. We reverse in part, affirm in part and remand.

This appeal arises out of the treatment of and surgery performed on plaintiff Janine Hansbrough. Afflicted with a history of fibrocystic disease, plaintiff sought the medical services of Dr. Franklin Roller and Dr. E. P. Kosyak, who diagnosed her condition in August 1981 as "severe fibrocystic disease." Both doctors recommended immediate surgery, advising a subcutaneous mastectomy with Silastic implants in each of her breasts.

Plaintiff entered defendant Hoopeston Community Memorial Hospital on August 24, 1981, for the recommended surgery. Upon admission, plaintiff signed a surgical consent form as requested by a hospital nurse. According to this form, the operation was to be a "simple mastectomy, bilateral, subcutaneous with immediate implant." Surgery was performed by Drs. Roller and Kosyak on August 25.

Plaintiff began to suffer complications shortly after her discharge from the hospital. Her right breast blistered; subsequently a hole in the skin appeared through which the Silastic implant was exposed. This condition was later diagnosed as resulting from necrosis or death of the skin at the site of the implant. The necrosis and resultant hole were in turn caused by the excision of too much fat under the breast skin and a concomitant lack of sufficient blood supply to the skin.

Thereafter, on October 22, 1981, plaintiff was readmitted to the hospital for the purpose of repairing the opening and ulceration of the right breast. During this surgery, the Silastic implant was removed. Treatment did not end there, however; plaintiff was once again readmitted to the hospital on December 17, 1981, to revise and improve the scar and "puckering" which remained present at the site of the previously existing hole in her right breast. Finally, on March 23, 1982, plaintiff was readmitted to the hospital to remove the 234 cc Silastic implant from her left breast and reimplant 200 cc Silastic implants in each of her breasts.

Plaintiff filed an 11-count complaint in the circuit court of Vermilion County on August 23, 1983, seeking to recover damages for alleged acts of medical malpractice during the course of treatment and surgery. Named as defendants were Dr. Roller, Dr. Kosyak, and the Hoopeston Hospital. Counts I through IV alleged various claims against Dr. Roller. Count V sounded in negligence against Dr. Kosyak;

count VI alleged the theory of *res ipsa loquitur* against Dr. Kosyak; count VII alleged a failure by the doctor to disclose or properly inform. Counts VIII and IX were derivative claims, in which plaintiff George Hansbrough sought damages for loss of consortium against both doctors. Count X as amended on April 12, 1984, claimed, among other allegations, that the hospital negligently permitted the doctors to perform surgery when they lacked the requisite skill for such surgery. Count XI as amended contained husband George's loss of consortium cause of action against the hospital.

Defendant Hoopeston Hospital moved for summary judgment on April 25, 1984. Said motion was supported by the answers of Drs. Kosyak and Roller to interrogatories propounded by the hospital. Supplemental support for the hospital's motion was filed on June 8, 1984, accompanied by the discovery deposition of Dr. William S. Johnson. A hearing was held on June 12, 1984; the court then took the motion under advisement pending the filing of briefs and authorities by the respective parties. Both a brief and supplemental brief in support of its motion for summary judgment were filed by defendant hospital. No such pleadings were filed by the plaintiffs.

The motion for summary judgment remained under advisement when a pretrial conference was held October 19, 1984. Under the pretrial order as issued, plaintiffs were instructed to disclose the names of their expert witnesses by December 14, 1984. No such disclosure of expert witnesses was made by plaintiffs during this time.

Hoopeston Hospital filed a supplemental motion for summary judgment on March 11, 1985. On March 12, defendant Dr. Kosyak filed his motion for summary judgment accompanied by his own affidavit and deposition transcript.

Plaintiffs filed their first response to defendants' motions for summary judgment on March 27, 1985. The affidavit of Dr. T. Shelly Ashbell, plaintiffs' expert, was presented at this time. The affidavit essentially stated that Dr. Ashbell had reviewed the record of medical care and surgery performed on plaintiff and expressed his opinion, based upon personal knowledge, that the doctors lacked sufficient training, knowledge, and experience to perform the surgery in question. Dr. Ashbell's affidavit continued that, according to the "standard of care nationwide, and in Illinois," such an operation should be performed by "surgeons trained in plastic and reconstructive surgery." Accordingly, the standard of care did not permit a general surgeon to perform this operation in a nonemergency situation. The affidavit further recounted Dr. Ashbell's belief that Hoopeston Hospital breached its applicable standard of care by allowing the doctors in question to

perform this surgery without at least requiring supervision by a qualified plastic surgeon. Based upon the deposition testimony of Dr. Kosyak and the consent form signed at the hospital, the affidavit concluded that the plaintiff may not have chosen to undergo this surgery had she been properly and adequately informed of the risks and alternatives, and that in fact performance of the subcutaneous mastectomy left no fat under the skin, deprived the skin of its circulation, and caused the resultant ulceration.

The next day, on March 28, 1985, plaintiff filed her own affidavit in opposition to defendants' motion for summary judgment. On April 22, defendant hospital filed a motion to strike the affidavit of plaintiffs' expert due to untimely submission and other technical defects.

Further hearings on the defendants' motions were held on April 26 and June 4. On June 7, 1985, the trial court entered an order striking the affidavit of Dr. Ashbell and granting defendant Hoopeston Hospital's motion for summary judgment. A second order was entered by the court on June 12 granting defendant Dr. Kosyak's motion to strike the Ashbell affidavit "as there [was] no testimony with regard to the appropriate standard of care," and entering summary judgment against plaintiffs. (At no time did the third defendant, Dr. Roller, present any motion for summary judgment; hence, the cause of action against him remains pending below.) This matter was then certified for interlocutory appeal by the trial court pursuant to Illinois Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)).

I

█ Our initial inquiry necessarily concerns whether the trial court properly struck the affidavit of the plaintiff's expert, for without it, plaintiff has no viable claim against either the doctor or the hospital. One element in a cause of action for medical malpractice is the standard of care by which the defendant's conduct is to be measured. (*Thompson v. Webb* (1985), 138 Ill. App. 3d 629, 486 N.E.2d 326.) The plaintiff must generally establish the standard of care, with limited exceptions, through expert testimony. (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 255-56, 381 N.E.2d 279, 282; *Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 471, 473 N.E.2d 1322, 1332.) Plaintiff must then prove by affirmative evidence that, judged in light of this standard, the defendant was unskillful or negligent and that his want of skill or care caused injury to the plaintiff. (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 381 N.E.2d 279; *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301.) Where a plaintiff fails to offer such expert testimony on the applicable standard of care, his action may be

dismissed. (*Mielke v. Condell Memorial Hospital* (1984), 124 Ill. App. 3d 42, 463 N.E.2d 216.) Moreover, a motion for summary judgment can be granted based upon the uncontradicted affidavit and testimony of a defendant-doctor. *Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 434 N.E.2d 50; *Prather v. Decatur Memorial Hospital* (1981), 95 Ill. App. 3d 470, 420 N.E.2d 810.

## A

■ Bearing these principles in mind, we must consider whether the trial court erred in striking the affidavit of the plaintiffs' expert regarding the defendant doctor. As to the standard of care applicable to a particular physician, we recognize that Illinois today follows a modified version of the so-called "locality rule," whereby a doctor is bound to exercise such care and diligence as a good practitioner in a same or similar community would under same or similar circumstances. (*Bartimus v. Paxton Community Hospital* (1983), 120 Ill. App. 3d 1060, 458 N.E.2d 1072.) A medical expert must then demonstrate his familiarity with the standard of care under the locality rule before his testimony may establish the standard of care. *Thompson v. Webb* (1985), 138 Ill. App. 3d 629, 486 N.E.2d 326.

The locality rule first developed when there existed substantial discrepancies in opportunities, equipment and facilities between urban and rural practitioners. Inability to travel from a rural community to an urban center also created a recognized, variance in the care received. Thus, a physician was held to the standard of care existing in his own community only. However, several concerns arose in applying this rule in an overly strict fashion. Getting a physician in the same community to testify was often difficult, if not impossible, as a "conspiracy of silence" among doctors would deprive a plaintiff of the expert medical testimony essential to his case. (Waltz, *The Rise & Gradual Fall of the Locality Rule in Medical Malpractice Litigation*, 18 DePaul L. Rev. 408 (1969).) In recent years, a few courts have reacted by abrogating the locality rule entirely based upon the premise that, with modern educational opportunities and means of travel, no justification presently exists for distinguishing between physicians based on location of practice. See Annot., 99 A.L.R.3d 1133 (1980).

Illinois and other jurisdictions have responded not by renouncing the rule altogether, but rather by settling on a less stringent version of the original rule. As we stated in *Bartimus*, a physician's conduct is now judged by the standard of care of a reasonably competent physician practicing in the same *or similar* communities. Illinois courts thus follow this "similar locality" rule in ascertaining the standard of

care applicable to a physician. (See *Thompson v. Webb* (1985), 138 Ill. App. 3d 629, 486 N.E.2d 326; *Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 480-81, 473 N.E.2d 1322, 1339; *Bartimus v. Paxton Community Hospital* (1983), 120 Ill. App. 3d 1060, 1066-67, 458 N.E.2d 1072, 1077; *Hirn v. Edgewater Hospital* (1980), 86 Ill. App. 3d 939, 408 N.E.2d 970; *Taber v. Riordan* (1980), 83 Ill. App. 3d 900, 904-05, 403 N.E.2d 1349, 1353; *Kwak v. St. Anthony De Padua Hospital* (1977), 54 Ill. App. 3d 719, 726, 369 N.E.2d 1346, 1351; *Stogsdill v. Manor Convalescent Home, Inc.* (1976), 35 Ill. App. 3d 634, 653, 343 N.E.2d 589, 603-04; *Borowski v. Von Solbrig* (1973), 14 Ill. App. 3d 672, 678, 303 N.E.2d 146, 150, *aff'd* (1975), 60 Ill. 2d 418, 328 N.E.2d 301.) This is also the standard provided in pattern jury instructions. See Illinois Pattern Jury Instructions (IPI), Civil, No. 105.01 (2d ed. 1971).

■ The term "locality" itself has no precise meaning, and varies with the facts of each particular case. (*Stogsdill v. Manor Convalescent Home, Inc.* (1976), 35 Ill. App. 3d 634, 343 N.E.2d 589.) The applicable locality should be narrowed no further than necessary to promote the rationale of the rule. (*Chamness v. Odum* (1979), 80 Ill. App. 3d 98, 399 N.E.2d 238.) However, where it is determined that only one uniform standard of care for treatment exists, the national standard and the community standard may be synonymous. (*Hunter v. Sukkar* (1982), 111 Ill. App. 3d 169, 443 N.E.2d 774.) Further, as the supreme court recently recognized, a doctor will not necessarily be disqualified as an expert even if he is unfamiliar with the practices of a particular community as long as there are certain minimum standards of care uniform throughout the country for the particular practice. *Purtill v. Hess* (1986), 111 Ill. 2d 229, 247.

■ Based upon the foregoing, we do not believe that Dr. Ashbell, the plaintiffs' expert, is so unfamiliar with the medical practice in Hoopeston or similar communities that he could not state an opinion concerning the applicable standard of care. Dr. Ashbell's affidavit stated his opinion was based upon "the standard of care nationwide, and in Illinois ***." Dr. Ashbell is a board-certified plastic surgeon, licensed in Illinois, who practices in the field of plastic and reconstructive surgery. He is also professor and chief of plastic and reconstructive surgery in the Chicago area. Defendant Dr. Kosyak, according to his curriculum vitae, though not board certified in plastic surgery, is licensed to practice in Illinois. He performed his residency in surgery at American Hospital in Chicago.

We resist any interpretation whereby an expert, because he currently practices in the Chicago area, would be automatically disqualified from rendering an opinion as to standards in Hoopeston or simi-

lar communities under the "similar locality" rule. Dr. Ashbell stated he was familiar with general procedures throughout the State. We note that in *Chamness v. Odum* (1979), 80 Ill. App. 3d 98, 399 N.E.2d 238, plaintiff brought a cause of action against a chiropractor in the rural Anna-Jonesboro, Illinois, area. Plaintiff's expert witness, a chiropractor practicing in the metropolitan area of St. Louis, testified based upon familiarity with the standards of chiropractors in the State of Illinois as a whole. The court held that the rationale for the locality rule did not require a finding that chiropractors practicing in Anna operate under a different standard of care than chiropractors generally in this State. (80 Ill. App. 3d 98, 108, 399 N.E.2d 238, 246.) The court noted that the educational backgrounds of the expert and the defendant were similar, and the knowledge upon which the standard of care was predicated was common knowledge in the profession. (80 Ill. App. 3d 98, 108-09, 399 N.E.2d 238, 246-47.) Also, the matter before us does not involve the same type of situation which arose in *Bartimus*, where the plaintiff's expert admitted having no familiarity with medical practice in either defendant's community or similar communities, had never worked in a hospital emergency room where the doctors were "on call," as had been the circumstances of the defendant, and testified only in terms of a "national standard." Moreover, *Bartimus* involved an expert's qualifications to testify at trial; we are here concerned instead with whether the expert's affidavit demonstrates sufficient familiarity with the standard of care to raise a genuine issue of material fact. See *Purtill v. Hess* (1986), 111 Ill. 2d 229.

We therefore find that the trial court erred in striking Dr. Ashbell's affidavit in this regard by applying an overly narrow interpretation of the locality rule. The affidavit is sufficient to provide proper foundation for his opinion on the appropriate standard of care, and can stand as a counteraffidavit in opposition to a motion for summary judgment.

## B

■ We then turn to the question of whether summary judgment was properly granted in favor of the defendant doctor. We find that it was not. We first note that in medical malpractice cases, as in other cases, summary judgment is appropriate only when there is no genuine issue of material fact. (*Thompson v. Webb* (1985), 138 Ill. App. 3d 629, 486 N.E.2d 326; *Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 522, 434 N.E.2d 50, 52.) The court must consider the entire record in the case, the affidavits, pleadings, admissions, depositions, and exhibits on file to determine whether a genuine issue of material fact

exists. (*Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 434 N.E.2d 50; see also Ill. Rev. Stat. 1983, ch. 110, par. 2—1005.) The court is under a duty to construe the evidence strictly against the moving party and liberally in favor of the opponent. (*Cassady v. Hendrickson* (1985), 138 Ill. App. 3d 925, 486 N.E.2d 1329; *Thompson v. Webb* (1985), 138 Ill. App. 3d 629, 486 N.E.2d 326.) The right to summary judgment of the moving party must be free from doubt and determinable solely as a question of law. (*Hill v. Lutheran Hospital* (1978), 58 Ill. App. 3d 1003, 374 N.E.2d 1147.) Further, if facts in the record lead to more than one conclusion or inference, including one unfavorable to the moving party, the motion should be denied. (*Smith v. Rengel* (1981), 97 Ill. App. 3d 204, 206, 422 N.E.2d 1146, 1148.) Finally, in medical malpractice cases, the trial court should be extremely cautious in entering summary judgment, particularly due to the reluctance of one member of the medical profession to testify against another. *Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 434 N.E.2d 50; *Sanders v. Frost* (1969), 112 Ill. App. 2d 234, 251 N.E.2d 105.

Again, the affidavit offered by the plaintiff relates that Dr. Ashbell is a physician and surgeon licensed in the State of Illinois, as well as a board-certified plastic surgeon practicing the speciality of plastic and reconstructive surgery in Chicago. He is a full professor of surgery at a Chicago medical school. According to the affidavit, Dr. Ashbell reviewed the records of the plaintiff. Essentially, Dr. Ashbell stated in the affidavit that the operation performed, a subcutaneous mastectomy, is extremely complex. In his opinion, the "standard of care nationwide, and in Illinois" requires that such an operation be performed by plastic surgeons trained in plastic and reconstructive surgery. The affidavit continues that it is a breach of the standard of care for general surgeons to perform this operation without referring it to a plastic surgeon.

The affidavit further recounts that, according to the consent form signed by the plaintiff at the hospital, the operation was to be a "*simple* mastectomy, bilateral, *subcutaneous* with immediate implant." (Emphasis added.) However, Dr. Ashbell states that a subcutaneous mastectomy involves a different procedure than a simple mastectomy, and that this misnaming of the surgical procedure "more probably than not" indicates a lack of sufficient training, expertise and knowledge to perform such surgery. Finally, Dr. Ashbell acknowledged that the necrosis and other complications suffered by the plaintiff were caused by insufficient fat left in the subcutaneous layer once the breast tissue was removed. Thus, Dr. Ashbell observed, the operation was in fact unskillfully performed. Plaintiff also cites deposition testi-

mony of defendant Dr. Kosyak, who attested that good surgical procedure entails leaving enough fat under the skin layer to provide cushioning as well as blood supply, but that no fat was left on the subcutaneous layer after surgery, thus causing the necrosis.

Therefore, taking the entire record into account, including the affidavit of the plaintiffs' expert witness, which was improperly stricken, we find that the standard of care has been established, and that material issues of fact exist as to whether Dr. Kosyak's actions complied with those standards.

## II

### A

Defendant hospital, on the other hand, does not argue that the Ashbell affidavit was properly stricken, nor does it argue its summary judgment should have been granted, because of a failure to set out the applicable standard of care under the locality rule. As several decisions have intimated, a hospital's standard of care is not conclusively determined by what is done by other hospitals in the community, as is the case with physicians. (See *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204; *Greenberg v. Michael Reese Hospital* (1980), 83 Ill. 2d 282, 415 N.E.2d 390.) Further, the standard of care a hospital is held to is the accepted standard of care within the medical community. *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 718, 399 N.E.2d 198, 205.

The hospital contends instead that the affidavit was untimely filed because it was not presented as of the initial hearing on its motion for summary judgment held June 12, 1984. Defendant advances other alleged technical defects by the plaintiffs in the alternative which it believes are dispositive of the issue. Defendant notes that the trial court, at the June 1984 hearing, ordered both parties to file briefs regarding plaintiffs' failure to file counteraffidavits or any contrary matters. While the hospital did file a brief within the deadline, plaintiffs failed to submit anything. Further, at the October 1984 pretrial conference, the court instructed the plaintiffs to disclose their expert witnesses by December 14, 1984. The hospital alleges that plaintiffs failed to do so before this deadline. Defendant further contends in its brief that, on March 27 and 28 of 1985, "without proper leave of the trial court, plaintiffs simply placed on file" the affidavits of Dr. Ashbell and the plaintiff. Defendant also maintains that the plaintiffs

failed to obtain any continuances on the hearing for summary judgment, and further filed the amended counts X and XI against the hospital without leave of court.

We cannot agree with the hospital's contentions. Initially, we do not believe that the plaintiffs were absolutely required to file counteraffidavits or other evidence in opposition to the hospital's motion for summary judgment as of the June 12, 1984, hearing, or be completely precluded from maintaining their cause of action. Plaintiffs had only field their complaint less than ten months earlier, and discovery was still in process. Next, we are cognizant that, where no materials such as counteraffidavits are filed in apt time to place a material question of fact in issue, then a motion for summary judgment in a medical malpractice action will be upheld. (*Prather v. Decatur Memorial Hospital* (1981), 95 Ill. App. 3d 470, 420 N.E.2d 810 (case pended for four years before plaintiff attempted to file anything to counter the defendant's affidavit).) We also acknowledge that obtaining evidence in this sort of matter is a potentially difficult and troublesome exercise. Thus, we are in accord with the view that a medical malpractice plaintiff should be afforded every reasonable opportunity to establish his case; it is only when the record indicates a plaintiff has had extensive opportunities to do so, but has failed in any way to demonstrate that he could show negligent acts or omissions through expert testimony or other evidence, that summary judgment should be allowed. (*Goldstein v. Kantor* (1981), 101 Ill. App. 3d 264, 427 N.E.1322; *Hill v. Lutheran Hospital* (1978), 58 Ill. App. 3d 1003, 374 N.E.2d 1147.) We therefore find that the hospital's motion to strike the affidavit of the plaintiffs' expert was also improperly granted.

## B

It therefore follows that summary judgment should not have been granted in favor of the hospital concerning its duty to review and supervise the plaintiff's treatment. It is well established that a hospital's duty to its patients requires it to conform to the legal standard of reasonable conduct in light of the apparent risk. (*Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 303 N.E.2d 392; *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253.) A plaintiff must prove that a hospital failed to comply with the proper standard of care which guides institutions holding themselves out as devoted to the care and saving of human life, and that this failure resulted in the injury complained of. *Scardina v. Colletti* (1965), 63 Ill. App. 2d 481, 211 N.E.2d 762.

■ A hospital may be liable for injuries suffered by a patient within its care under two distinct theories: both for its physician-agent's misconduct and for a violation of an independent duty owed by the hospital to review and supervise medical care administered to a patient. (*Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253; *Ingram v. Little Company of Mary Hospital* (1982), 108 Ill. App. 3d 456, 458, 438 N.E.2d 1194, 1196; *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 399 N.E.2d 198.) Thus, in *Johnson*, the court ruled that the hospital had a duty to use reasonable efforts to assist the treating physician in obtaining consultation in a specialized area of treatment. Moreover, we note the following language in *Darling*:

" 'The conception that the hospital does not undertake to treat the patient, does not undertake to act through its doctors and nurses, but undertakes instead simply to procure them to act upon their own responsibility, no longer reflects the fact. Present-day hospitals, as their manner of operation plainly demonstrates, do far more than furnish facilities for treatment. They regularly employ on a salary basis a large staff of physicians, nurses and internes, as well as administrative and manual workers, and they charge patients for medical care and treatment, collecting for such services, if necessary, by legal action. Certainly, the person who avails himself of "hospital facilities" expects that the hospital will attempt to cure him, not that its nurses or other employes will act on their own responsibility.' [Citation.] The Standards for Hospital Accreditation, the state licensing regulations and the defendant's bylaws demonstrate that the medical profession and other responsible authorities regard it as both desirable and feasible that a hospital assume certain responsibilities for the care of the patient." *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 332, 211 N.E.2d 253, 257.

Dr. Ashbell stated in his affidavit that, in his opinion, it is a breach of the standard of care for general surgeons to perform the operation in question rather than to refer the case to a plastic surgeon. The affidavit went on to state that, because neither Dr. Kosyak nor Dr. Roller were plastic surgeons, the defendant hospital breached its standard of care by allowing them to perform the surgery without at least requiring supervision by a qualified plastic surgeon. We therefore believe that the Ashbell affidavit, offered as expert evidence by the plaintiffs, has sufficiently set forth the standard of care within the medical community, thus placing material questions of fact in issue.

## II

■ Plaintiffs also contend that they have raised genuine issues of material fact as to the alleged failure of the defendant doctor to properly inform or disclose. Significantly, the standard of care regarding informed consent is different from that concerning negligence or medical malpractice. The majority rule, and the rule in Illinois today, is that of the reasonable physician. This substitutes a national standard of reasonable and ordinary care for the traditional locality standard. (*Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1, 452 N.E.2d 751.) Physician disclosure is therefore measured by what a reasonable physician would disclose under the same or similar circumstances. *Ziegert v. South Chicago Community Hospital* (1981), 99 Ill. App. 3d 83, 92, 425 N.E.2d 450, 458-59.

■ A physician has a duty to inform patients of the foreseeable risks and results of a given surgical procedure, as well as the reasonable alternatives to such procedure. (*Magana v. Elie* (1982), 108 Ill. App. 3d 1028, 1031, 439 N.E.2d 1319, 1321; *Green v. Hussey* (1970), 127 Ill. App. 2d 174, 183, 262 N.E.2d 156, 160-61.) The physician's duty extends to disclosure of those risks, results, or alternatives that a reasonable medical practitioner of the same school, in the same or similar circumstances, would have made known. (*Magana v. Elie* (1982), 108 Ill. App. 3d 1028, 439 N.E.2d 1319.) Plaintiff has the burden of proving through expert medical evidence that the failure of the physician to conform to the professional standard of disclosure proximately caused the plaintiff's injury. *Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1, 452 N.E.2d 751.

■ Whether a signed form constitutes effective consent to treatment has been held to present a proper question of fact for the jury. (*Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1, 452 N.E.2d 751.) However, even if the informed consent may have been defective, plaintiff's resulting condition must have been proximately caused by the absence of informed consent. (*Green v. Hussey* (1970), 127 Ill. App. 2d 174, 262 N.E.2d 156.) The court in *Guebard* stated:

> "The majority rule is that causation in informed consent cases is determined by an objective standard, what a prudent person in plaintiff's position would have decided if adequately informed. [Citations.] The plaintiff's testimony, while relevant, will be assessed under a reasonableness standard. [Citation.] If disclosure would not have changed the decision of a reasonable person in the position of the patient, there is no causal connection between nondisclosure and his post-operative condition; if, however, disclosure would have caused a reasonable person in

the position of the patient to refuse the surgery or therapy, a causal connection is shown. [Citation.] Otherwise, the physician is put in ' "jeopardy of the patient's hindsight and bitterness." ' [Citations.]" *Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1, 10, 452 N.E.2d 751, 757-58.

Plaintiff states in her affidavit that she inquired as to any possible complications or unfavorable results concerning the proposed surgery, and that Dr. Roller replied, "there can be complications, but you have nothing to worry about." She further states in her affidavit that no other explanation or statement of possible complications were ever made to her by any person prior to the surgery. Plaintiff concludes that, had she actually been informed of the attendant risks and possible complications, she would have either reconsidered undergoing such surgery or sought alternative methods of treatment. Plaintiffs' expert states that, where proper information is given, his patients either refuse to undergo the operation or in fact choose alternative procedures such as total mastectomies. Further, Dr. Ashbell states in his affidavit that the consent form actually signed was "grossly inadequate" for the surgical procedure performed. Dr. Ashbell's affidavit further recounts that, because a subcutaneous mastectomy is an operation "fraught with numerous complication, side-effects and untold results," then "the standard of care requires a detailed and itemized consent," which he indicated was not present here.

■ Considering the record before us now, we see plaintiff's allegations that she was not adequately informed and that she may have chosen alternative measures with proper disclosure, along with the expert's opinion that the generalized hospital consent form was inadequate for its purposes. Furthermore, we observe the admonition that whether effective consent to treatment has been given presents a proper question of fact. We therefore find that the issue of whether informed consent was given is a matter that should go before a jury, and summary judgment on the plaintiffs' count against Dr. Kosyak was improper.

### III

■ Finally, we must determine the status of those claims asserted by plaintiffs in their complaint but not raised on appeal. Count VI sounded in *res ipsa loquitur* against defendant Dr. Kosyak. The 11-count complaint also contained two derivative claims brought in favor of George Hansbrough, the husband, for loss of consortium against both defendants. These theories of recovery were not raised by plaintiffs on appeal. Because points not argued in an appellant's

brief but made at trial are deemed waived (*URS Corp. v. Ash* (1981), 101 Ill. App. 3d 229, 236, 427 N.E.2d 1295, 1301), any arguments concerning the *res ipsa* and loss of consortium counts have therefore been waived by the plaintiffs.

For the foregoing reasons, the orders of the trial court striking the affidavit of plaintiffs' expert are reversed; summary judgment as to count V (alleging negligence against defendant Dr. Kosyak), count VII (based upon failure to disclose or inform against Dr. Kosyak), and count X (brought against the defendant hospital alleging failure to properly supervise) is reversed; and summary judgment is affirmed as to count VI (sounding in *res ipsa loquitur* against Dr. Kosyak) and counts IX and XI (containing husband George's loss of consortium claims against the respective defendants). We remand the cause for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.

WEBBER and SPITZ, JJ., concur.