2022 IL App (1st) 200609-U

THIRD DIVISION
March 2, 2022

No. 1-20-0609

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| FRANCINE STEWART, Individually and as Special Administrator of the Estate of CHARLES STEWART, Deceased, | ) ) ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| . | ) | Appeal from the |
| ABBOTT LABORATORIES, ST. JUDE MEDICAL, | ) | Circuit Court of |
| S.C., INC., RICHARD TROHMAN, M.D., Individually | ) | Cook County |
| and as agent and/or employee of RUSH UNIVERSITY | ) | |
| MEDICAL CENTER, PARIKSHIT SHARMA, M.D., | ) | |
| Individually and as agent and/or employee of RUSH | ) | 18 L 12962 |
| UNIVERSITY MEDICAL CENTER, CHRISTOPHER | ) | |
| MADIAS, M.D., Individually and as agent and/or | ) | |
| employee of RUSH UNIVERSITY MEDICAL CENTER, | ) | Honorable |
| SANDEEP A. SAHA, M.D., Individually and as agent | ) | Moira S. Johnson, |
| and/or employee of RUSH UNIVERSITY MEDICAL | ) | Judge Presiding |
| CENTER, NEAL RUGGIE, M.D., Individually and | ) | |
| as agent and/or employee of RUSH UNIVERSITY | ) | |
| MEDICAL CENTER, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| (Rush University Medical Center, Defendant-Appellant.) | ) | |

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Gordon and Justice Burke concurred in the judgment.

**ORDER**

¶ 1   *Held*: Affirmed in part, vacated in part, remanded. Court did not abuse discretion by ordering defendant to answer discovery prior to plaintiff's compliance with Section 2-622. Contempt finding vacated, as defendant's challenge was in good faith.

¶ 2   Rush University Medical Center (Rush) appeals the order holding it in friendly contempt for refusing to answer discovery prior to plaintiff filing a medical-negligence affidavit and expert report as required by state law. Before this court, Rush argues that it should not be required to answer. We disagree and affirm the court's discovery order. But because we find that Rush's argument was in good faith, we vacate the contempt finding.

¶ 3                             BACKGROUND

¶ 4   For purposes of background, we draw most of the information from the complaint, without expressing any opinion on the ultimate truth of these facts.

¶ 5   In March 2014, doctors at defendant Rush University Medical Center ("Rush") placed an implantable defibrillator device in Charles Stewart to treat his heart condition. This particular device was known as an implanted cardioverter defibrillator device, or "ICD." The ICD was manufactured by defendant St. Jude Medical, S.C. ("St. Jude").

¶ 6   In October 2016, St. Jude "issued an advisory recall" of the ICD and other defibrillators "because of a premature battery depletion defective." St. Jude issued notice of this product defect to physicians and healthcare providers, including Rush.

¶ 7   On December 5, 2016, again at Rush, Charles underwent a "CRT-D Generator change, possible lead revision" of his St. Jude implantable defibrillator device. Though the complaint does not particularly elaborate on the details of this procedure, it seems clear enough that medical professionals at Rush implanted a replacement defibrillator—a cardiac resynchronization therapy defibrillator, or "CRT-D"—in Stewart.

¶ 8      Before he had even left the Rush campus later that day, Charles was communicating with Rush agents or employees, reporting "a problem with the device and/or its home monitoring system." Presumably later that day, Charles received information from both Rush and St. Jude "on steps to take to synchronize and reset the [home monitoring] system and devices."

¶ 9      The next day, December 6, Charles collapsed outside his home.  He was taken by ambulance to St. Bernard Hospital, where he died.

¶ 10     Less than a year later, the FDA issued a "Class I recall" of the defibrillator that had been implanted in Charles, warning it "may cause serious injury and/or death."

¶ 11     Nearly two years after Charles's death, on December 3, 2018, Charles's wife, plaintiff Francine Stewart, individually and as special administrator of Charles's estate, sued various hospitals, doctors, and manufacturers of the defibrillator devices. Her five-count complaint sounded in products liability and medical negligence. Among others not relevant here, plaintiff sued Abbott Laboratories and St. Jude for designing, manufacturing, and distributing an allegedly defective defibrillator. She also sued Rush for medical negligence, alleging that Rush was negligent in (1) failing to protect her husband from alterations in heart rate; (2) failing to adequately warn him of life-threatening problems associated with the defibrillator systems; (3) failing to properly implant the defibrillator device; (4) failing to adequately monitor her husband and the device; and (5) failing to test and inspect the defibrillator.

¶ 12     Generally speaking, when a complaint alleging medical negligence is filed, section 2-622 of the Code of Civil Procedure requires the plaintiff's counsel to attach to the complaint an affidavit indicating that counsel has conferred with a qualified health professional who, in a written report, has found "reasonable and meritorious cause" to file the action. 735 ILCS 5/2-622(a) (West 2016). But section 2-622(a) also permits, in lieu of that affidavit and written report,

an affidavit by counsel attesting that counsel has requested records from the relevant defendant health care facility or practitioner, and the party required to comply has not produced the records within 60 days of the request. *Id.*; see 735 ILCS 5/8-2001 (West 2016) (as referenced in section 2-622(a), requiring health care facilities and practitioners to produce records upon request of patient or patient's legal representative). In that latter event, the affidavit and written report is due within 90 days after the records requested are produced. 735 ILCS 5/2-622(a) (West 2016).

¶ 13    Plaintiff's counsel here filed this latter affidavit, claiming that plaintiff had requested medical and other records from Rush under section 8-2001 of the Code, which had yet to be produced. The affidavit acknowledged that a section 2-622 affidavit would be due within 90 days of receipt of those requested records.

¶ 14    Plaintiff later moved for an extension of time to file the affidavit and report, claiming that counsel needed time to review the "15,577 pages of medical records and radiology studies relating to Mr. Stewart's care and treatment" that Rush produced. While the medical record review was ongoing, plaintiff also issued interrogatories seeking information about the defibrillator implanted in Charles.

¶ 15    The court did not immediately grant the extension and continued the matter several times for status on Rush's answer to discovery. Eventually, the court ordered Rush to answer the discovery "relating to [the] defib device." In that same order, the court entered and continued the motion for extension "generally" and set the case for status.

¶ 16    The court order specifically required Rush to answer Interrogatories 20 and 21. Interrogatory 20 requested:

"the names of any known persons, agencies, government offices, entities, or law enforcement officers or agencies both currently or previously involved in identifying, selecting, handling, transporting or copying documents or materials related to the investigation of ST. JUDE MEDICAL implantable defibrillator device including Model 1688TC/52, 1688TC/58, 7121Q/65, 1258T/92, and CD 3357-40Q. This interrogatory seeks to establish the chronological chain of custody for any and all documents, notes, or materials compiled during the investigation of the location of the ST. JUDE MEDICAL implantable defibrillator device including Model 1688TC/52, 1688TC/58, 7121Q/65, 1258T/92, and CD 3357-40Q."

¶ 17   Interrogatory Number 21 sought:

"the addresses of your document depositories or any other place where you maintain or have maintained records relating to the ST. JUDE MEDICAL implantable defibrillator device including Model 1688TC/52, 1688TC/58, 7121Q/65, 1258T/92, and CD 3357-40Q up through and including the present, and also list the Bates stamp number and other identifying information for the document or documents in question, as well as the dates in which the document or documents have been retained in the specific location(s) listed. If the records have been moved at all during the time period between from the date alleged in the complaint at law and the present, state the reason for the move, and if a clear chain of custody cannot be established, provide an explanation. This interrogatory seeks to establish the chronological chain of custody for any and all documents, notes or materials compiled during the investigation ST. JUDE MEDICAL implantable defibrillator device including Model 1688TC/52, 1688TC/58, 7121Q/65, 1258T/92, and CD 3357-40Q."

¶ 18    In answering each interrogatory, Rush responded: "None known to this defendant. Plaintiff's Interrogatory [] is better directed towards Co-defendants." Plaintiff filed a motion to compel. At the hearing on the motion, the court was unclear about why Plaintiff needed "chain of custody information." Because there was nothing discussing that need in the motion, and counsel could not provide an explanation in open court, the court ordered a written explanation and continued the motion to compel.

¶ 19    Plaintiff then gave the following written explanation for her need for the information:

"The Plaintiff's medical records do not reflect what the RUSH UNIVERSITY MEDICAL CENTER physicians were informed by ABBOTT, which specific devices they were informed were defective, how when and where the defibrillator implanted in Mr. Stewart was interrogated and by whom (ie-private company personnel, ST. JUDE personnel, RUSH UNIVERSITY personnel, etc.), the location of the defibrillator in question and the chain of custody of the device associated with the official investigation/interrogation of the device. This information is relevant and necessary for purposes of determining what RUSH UNIVERSITY physicians knew about the defective devices, MR. STEWART's specific device, and whether the implanted defibrillator device should have been removed from MR. STEWART on or before December 5, 2016." (Parenthetical in original.)

¶ 20    After this explanation, the court heard argument. Again, Rush claimed it was not required to answer discovery. Plaintiff argued that she needed the information to determine whether Rush belonged in the case. The court resolved the matter as follows:

"So here's what I'm going to do: I had already ordered for you [Rush] to review the answers that he gave. The plaintiff has directed you to two instances where witnesses or

6

communications are made between people. And so instead of you arguing anymore, you need to get the information about the communications between Rush and your co-defendant with regard to the defibrillator. We need the names and information and we need those answers."

¶ 21    The parties then discussed the specific information the interrogatories requested. Again, the court told Rush to answer the interrogatories. Plaintiff offered to amend the language to be more precise. But Rush's counsel responded: "I am not quarreling with the language, Judge. What I am quarreling with is that there is a medical negligence claim against Rush in this case without a 622 report." After counsel added that plaintiff was "put[ting] the cart before the horse," the court interjected as follows:

"Okay. Here, let me say it this way: We have a combination negligence/products liability case that involves the installation of some kind of defibrillator. In order for the expert to determine whether there was a breech [*sic*] of deviation from the standard of care, he needs this information to give to his expert. So we unfortunately have to handle this a little bit differently than we usually do with a typical standard medical negligence where the only thing we're looking at is the conduct of medical providers and so we need this information.

Now, plaintiff has offered and I don't have a problem with it because I don't see a problem with answering this question because the answer that is typical, please see the medical records, is not sufficient. But if plaintiff wants to give you in seven days something that is—something that he thinks may be more descriptive and helpful to you in answering this question, do it. But we're going to have to have an answer with regard to this defibrillator."

7

¶ 22    The court then allowed plaintiff to issue supplemental interrogatories within 7 days, allowed 28 days to respond, and granted the motion for extension of time "without prejudice." The court told the parties, "And when and if I see that there's been compliance with this discovery, I will then tell you how long you will have to get a 622 on file."

¶ 23    Consistent with its position that the discovery was inappropriate, Rush failed to respond within the time ordered by the Court. Plaintiff filed another motion to compel and argued that Rush should be sanctioned or held in contempt. The court agreed and entered "a sanction of $200 per day" against Rush. At that point, Rush's counsel advised the court that it would consider friendly contempt.

¶ 24    About a month later, Rush requested friendly contempt, and the court obliged. It vacated the entirety of the $200/per day sanction and entered a $500 penalty and held Rush in contempt for failing to respond to Plaintiff's interrogatories.

¶ 25    Rush timely appealed.

¶ 26                                ANALYSIS

¶ 27    Rush claims the circuit court erred in requiring answers to "extensive" discovery before requiring plaintiff to file her section 2-622 affidavit and report. In Rush's view, plaintiff did not justify her need for that discovery, which resulted as well in an "indefinite" delay in filing the required affidavit and report in violation of section 2-622.

¶ 28    A party may challenge the correctness of a discovery order through contempt proceedings. *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001). When the party appeals the contempt sanction for noncompliance with that discovery order, our review necessarily includes the propriety of the discovery order itself. *Id.*; see *In re Marriage of Nettleton*, 348 Ill. App. 3d 961,

968 (2004) (review of contempt finding "necessarily requires review of the order upon which it is based").

¶ 29    As noted, section 2-622 requires plaintiffs seeking "damages for injuries or death by reason of medical hospital or other healing art malpractice" to file an affidavit of merit and expert report. 735 ILCS 5/2-622 (West 2020). This affidavit ensures that plaintiffs, or their attorney, have consulted with a medical professional who, in a written report, has found "a reasonable and meritorious cause" for filing the claim. *Id*. § 2-622(a).

¶ 30    This requirement was designed to eliminate frivolous medical malpractice suits at the pleading stage. *Sullivan v. Edward Hospital,* 209 Ill. 2d 100, 117 (2004); *DeLuna v. St. Elizabeth's Hospital*, 147 Ill. 2d 57, 65 (1992). But we should liberally construe section 2-622, not apply it " 'mechanically *** to deprive a plaintiff of [their] substantive rights.' " *Lee v. Berkshire Nursing & Rehab Center, LLC*, 2018 IL App (1st) 171344, ¶ 18 (quoting *Schroeder v. Northwest Community Hospital*, 371 Ill. App. 3d 584, 595 (2006)). Indeed, " 'a medical malpractice plaintiff should be afforded every reasonable opportunity to establish his case.' " *Id.* (quoting *Hansbrough v. Kosyak*, 141 Ill. App. 3d 538, 549 (1986)).

¶ 31    While the affidavit and report are required when filing the complaint, the statute permits two exceptions to that concurrent filing. *Horlacher v. Cohen*, 2017 IL App (1st) 162712, ¶ 62. Section 2-622 allows the party to file an affidavit swearing they were unable to provide the affidavit and report (1) due to the impending expiration of the limitations period or (2) because the defendant has not turned over medical records pursuant to a separate section of the Code of Civil Procedure requiring caregivers and hospitals to turn over medical and other records to patients or their representatives. 735 ILCS 5/2-622(a)(2) (West 2016); see *id*. ¶ 8-2001. In each of these cases, Section 2-622 permits a 90-day extension on filing the affidavit. *Id*. ¶ 2-622(a).

¶ 32    The court, in its discretion, may allow plaintiffs to take discovery from a health care facility, beyond a patient's personal medical records, before filing the section 2-622 affidavit and report. See *Zangara v. Advocate Christ Medical Center*, 2011 IL App (1st) 091911, ¶ 33. We traditionally afford a trial court "great latitude" in determining the scope of discovery. *Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 927 (2007).

¶ 33    The circuit court here recognized that this case presented a somewhat unique example of a medical-negligence case that involved an allegedly defective product. So the question of whether Rush was negligent in implanting the original and replacement defibrillators depended, at least in part, on Rush's knowledge of the defective nature of the device—information that might not be discernible simply from reviewing a patient's medical records. Plaintiff needed to know what Rush knew or was told about the defective nature of the defibrillator and when, so that an expert could assess whether Rush and its physicians deviated from the appropriate standard of care. By no means could we say that the trial court's decision to allow this discovery was so arbitrary or unreasonable as to constitute an abuse of discretion.

¶ 34    Rush complains that the discovery rulings by the court had the *de facto* effect of indefinitely extending the deadline for filing the affidavit and report under section 2-622 without good cause. See *Horlacher*, 2017 IL App (1st) 162712, ¶ 67 (extensions of time beyond 90-day filing are permitted upon showing of "good cause" under Illinois Supreme Court Rule 183 (eff. Feb. 16, 2011)).

¶ 35    To the extent we might read Rush as arguing that the court erred by entering and continuing plaintiff's motion for extension initially, and later by granting the motion without a fixed deadline for compliance, we lack jurisdiction to consider it. As noted, we are limited to

reviewing the contempt order and the underlying order that spawned it—the discovery order compelling Rush's response. *Norskog*, 197 Ill. 2d at 69.

¶ 36     But we read Rush as citing this delay-without-good-cause as another example of how the trial court abused its discretion in allowing plaintiff's discovery in the first instance. To that, we would note that most of the delay in the proceedings below owed to Rush's refusal to comply with the discovery. Plaintiff first moved for an extension of time after receiving over 15,000 documents from Rush. But in the interim, plaintiff issued the discovery to Rush, which Rush believed it had no obligation to answer. And from there, the standoff continued via motions to compel and contempt citations. We are not suggesting that Rush was acting in bad faith—quite the opposite, in fact, as discussed below—but the fact remains that the bulk of the time passage was much more a result of Rush's failure to comply than anything else.

¶ 37     Finding no abuse of discretion, we uphold the trial court's discovery order.

¶ 38     We do, however, vacate the contempt finding, as the trial court predicted we would. As noted, Rush followed the appropriate course by challenging the discovery order via contempt proceedings. See *Norskog*, 197 Ill. 2d at 69. Regardless of whether we agree with Rush's objections to the discovery order, vacatur of the contempt finding is appropriate if Rush acted in good faith with a sound legal basis. See *Brown v. Advocate Health & Hospitals Corp.*, 2017 IL App (1st) 161918, ¶ 28; *Adler v. Greenfield*, 2013 IL App (1st) 121066, ¶¶ 71-72. Rush met that standard here.

¶ 39                                    CONCLUSION

¶ 40     We affirm the discovery order under review. We vacate the contempt order.

¶ 41     Affirmed in part, vacated in part, remanded.

11