EVELYN MAVIS THOMPSON, Indiv. and as Special Adm'r of the Estate of James R. Thompson, Deceased, Plaintiff-Appellant, v. DAVID K. WEBB, Defendant-Appellee.

Fourth District   No. 4—85—0343

Opinion filed November 21, 1985.—Rehearing denied December 30, 1985.

Kennith W. Blan, Jr., of Blan Law Offices, of Danville (Leslie Kvale Ross, of counsel), for appellant.

Todd M. Tennant, of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff appeals from the granting of a summary judgment (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005) for defendant on his complaint of medical malpractice grounded in negligence. We reverse.

In medical malpractice cases, as in other cases, summary judgment is properly granted only where there is no genuine issue as to any material fact. The court is to determine the existence or absence of a genuine issue as to any material facts from the record in the case—the affidavits, depositions, admissions, exhibits, and pleadings. The court has the duty to construe evidence strictly against the moving party and liberally in favor of the opponent. It is well settled that the right to summary judgment must be free from doubt and determinable solely as a question of law. (See *Wilcox v. Natural Gas Storage Co.* (1962), 24 Ill. 2d 509, 513, 182 N.E.2d 158, 161; *Ray v. City of Chicago* (1960), 19 Ill. 2d 593, 599, 169 N.E.2d 73, 76.) Further, if the facts admit of more than one conclusion or inference, including one unfavorable to the moving party, the motion should be denied. (*Smith v. Rengel* (1981), 97 Ill. App. 3d 204, 206, 422 N.E.2d 1146, 1148.) In medical malpractice cases, the trial court should be extremely cautious in entering summary judgment because of the reluctance of a member of the medical profession to testify against another member. (*Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 522-23, 434 N.E.2d 50, 52.) A reviewing court will reverse an order granting summary judgment if it is determined that a material question of fact does exist. *Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 393, 349 N.E.2d 1, 2.

One element of a cause of action for medical malpractice is proof of the standard of care by which the defendant physician's conduct is to be measured. The plaintiff generally must establish (1) the standard of care, through expert testimony, and (2) judged in light of these standards, the defendant doctor was unskillful or negligent, and his want of skill or care caused the injury to plaintiff. (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 255-56, 381 N.E.2d 279, 282.) Neither of the exceptions to the general rule that expert testimony is needed to support a charge of malpractice are applicable here. (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 381 N.E.2d 279 (physician's conduct so grossly negligent, or treatment so common, that laymen could readily appraise it); *Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 303 N.E.2d 392 (written procedures or explicit instructions from drug manufacturer).) Insofar as the standard of care, medical practitioners are to be held only to the standard of reasonable skill and are not expected to manifest the highest skill or insure a particu-

lar result. *Greenberg v. Michael Reese Hospital* (1980), 83 Ill. 2d 282, 289, 415 N.E.2d 390, 394.

■ It has been generally stated that the burden of establishing the qualifications of an alleged expert witness is on the proponent of his testimony; and the fact that the opponent may be given an opportunity to cross-examine the witness as to his qualifications does not reduce the proponent's burden of establishing those qualifications. Whether the burden has been met is a matter within the discretion of the trial court, and is subject to reversal only if it constitutes an abuse of discretion. (*People v. Park* (1978), 72 Ill. 2d 203, 380 N.E.2d 795.) In medical malpractice cases, a part of this foundation is the medical expert's familiarity with the relevant standard of care, *i.e.*, the so-called "locality rule." *Bartimus v. Paxton Community Hospital* (1983), 120 Ill. App. 3d 1060, 458 N.E.2d 1072; *contra, Chamness v. Odum* (1979), 80 Ill. App. 3d 98, 107, 399 N.E.2d 238, 246 (all that is necessary for expert to establish is that there was a generally accepted medical standard of care or skill which entailed treatment or performance of a procedure in a manner different than that provided by defendant).

■ Under the strict interpretation of the locality rule, a physician was held to the standard of care existing in *his own community*. As this court remarked in *Bartimus*, a less stringent version of the rule has developed, whereunder a physician's conduct is judged by the standard of care of a reasonably competent physician practicing "in the same *or similar* communities." The Illinois appellate courts follow this "similar locality" rule in determining the standard of care applicable to a physician (see *Bartimus v. Paxton Community Hospital* (1983), 120 Ill. App. 3d 1060, 1066-67, 458 N.E.2d 1072, 1078; *Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 480-81, 473 N.E.2d 1322, 1339; *Stogsdill v. Manor Convalescent Home, Inc.* (1976), 35 Ill. App. 3d 634, 653, 343 N.E.2d 589, 603; *Taber v. Riordan* (1980), 83 Ill. App. 3d 900, 904-05, 403 N.E.2d 1349, 1353; *Kwak v. St. Anthony De Padua Hospital* (1977), 54 Ill. App. 3d 719, 726, 369 N.E.2d 1346, 1351; *Borowski v. Von Solbrig* (1973), 14 Ill. App. 3d 672, 678, 303 N.E.2d 146, 150, *aff'd* (1975), 60 Ill. 2d 418, 328 N.E.2d 301; *Chamness v. Odum* (1979), 80 Ill. App. 3d 98, 108, 399 N.E.2d 238, 246); and this is the standard provided in jury instructions applicable to general practitioners and specialists (Illinois Pattern Jury Instructions (IPI), Civil, Nos. 105.01, at 319-21, and 105.02, at 322-23 (2d ed. 1971)).

According to the record, the plaintiff was treated by defendant physician in his professional capacity on January 6, 1981, for a com-

plaint of rectal bleeding. Defendant diagnosed plaintiff as suffering from hemorrhoids and prescribed a foam for treatment. Plaintiff alleged that, at the time, he was in fact suffering from rectal cancer. Plaintiff was admitted to a veterans hospital several months after defendant's diagnosis, and a cancerous tumor in the rectum was diagnosed and removed. Plaintiff died on June 6, 1983. The record contains defendant's report on plaintiff on the form of Mahomet Clinic, Department of Family Practice, Carle Clinic Association. Defendant stated that Mahomet is 10 miles from Champaign, and acknowledged at argument that he is associated with Carle Clinic.

Defendant's affidavit, filed with his original motion for summary judgment, stated: (1) he was licensed to practice medicine in Illinois, and was board-certified as a specialist in family practice; (2) he practiced and maintained an office in Mahomet, Illinois; (3) he examined plaintiff on January 6, 1981, and rendered medical care and treatment to him; (4) he obtained a history from plaintiff who complained of rectal bleeding periodically, but denied changes in bowel habits, red blood or changes in stool, and indicated evacuation involved slight itching but was without pain; (5) he conducted a rectal examination of plaintiff including a digital examination, a visualization, and an anoscopic examination, and found plaintiff had Class II internal hemorrhoids which were bleeding; (6) he ordered some laboratory examinations (for other conditions) and prescribed treatment for the hemorrhoids; (7) at the conclusion of the office visit, he instructed plaintiff to return to the clinic in three months (for other conditions), or sooner if his condition did not improve from the treatment ordered; (8) thereafter he had no personal contact with plaintiff; (9) he was familiar with the medical standards of care for a board-certified family physician, and for physicians, in rendering care and treatment to persons presenting such complaints as those of plaintiff in this and similar communities; (10) he had examined the complaint and opined he possessed and applied the knowledge, and used the degree of skill and care, ordinarily possessed and applied by physicians and board-certified family physicians in examining, treating, and caring for patients such as plaintiff; (11) the failure to diagnose cancer is not of itself evidence of a deviation from the accepted standard of care; and (12) given the history and complaints related by plaintiff, and the findings made during the examination, he did not deviate from the accepted standard of care in not diagnosing that plaintiff suffered from cancer on January 6, 1981.

Defendant was deposed on August 3, 1983, and acknowledged that a proctoscopic (sigmoidoscope) examination was not performed in his diagnosis of plaintiff; no stool examination was performed; and no

tissue sample was taken. By contrast, plaintiff's expert, Dr. Radecki, deposed that irrespective of the time interval plaintiff represented to defendant as to his rectal bleeding, defendant was negligent by (1) failing to perform or schedule a sigmoidoscope of plaintiff at the initial visit; (2) relying on the anoscopic examination; (3) performing the digital rectal examination, without locating the tumor; and (4) relying on the diagnosis of hemorrhoids as the main source of bleeding, as reflected in defendant's office notes indicating plaintiff was instructed to come back in three months for a check of his cardiovascular and prostate.

After Radecki was deposed, the defendant renewed his motion for summary judgment or, in the alternative, to bar plaintiff's medical expert from testifying as an expert witness for plaintiff. The trial judge allowed the motion for summary judgment on the basis of this court's decision in *Bartimus v. Paxton Community Hospital* (1983), 120 Ill. App. 3d 1060, 458 N.E.2d 1072. The court referred to portions of a modified affidavit by Dr. Radecki, which stated:

> " '3. I am familiar with the standards governing diagnosis of neoplastic diseases in Illinois, and elsewhere in the United States, and in particular in communities with populations and medical facilities comparable to those existing in Champaign County, Illinois, and in particular with large clinic practices having satellites in small communities such as Mahomet, Illinois, having done an oncology residence in 1952, where I was engaged in a community of a population of approximately 5,000, having myself examined and diagnosed dozens of such cases in the past, including those of 65 year old male patients presenting with rectal bleeding episodes associated with bowel movements.
>
> 4. The standard of care in diagnosing such patients, whether by a family practice specialist or a general practitioner, does not vary from community to community, but is of general basic medical knowledge, covered by the most basic medical texts, and is without exception addressed in medical internships throughout the United States.' "

The court also referenced Radecki's opinion, as stated in the affidavit, that the defendant had failed to possess and apply the knowledge, and use the skill and care, that is ordinarily used by reasonably well qualified doctors in Champaign County, Illinois, or in localities similar to Mahomet, Illinois, in similar cases and circumstances; and that he had violated basic standards of accepted primary care by performing an inadequate and incomplete work-up in diagnosing plaintiff's condition.

Radecki had been deposed at his office in Toledo, Ohio, on February 18, 1985. The court remarked that in this deposition, Radecki affirmatively responded that his opinion, as to the standard of care in examination and diagnosis of rectal cancer, was based on his awareness of basic medical knowledge; when asked if this was basically a national standard, he replied, " 'I would think so, yes.' " Radecki acknowledged that the *standards of medical or surgical practice vary* throughout the country, but asserted that the *standard for examination and diagnosis of rectal cancer did not vary*. Radecki was not licensed to practice medicine in Illinois. The court stated that Radecki knew few doctors in Illinois and, when asked whether he knew the standard of care possessed and applied by board-certified family physicians in communities such as Mahomet, Farmer City, Mansfield, Fisher, Athens, or Arcola, Illinois, Radecki answered that he did not. Radecki further stated he had no contact with family physicians in communities such as Champaign-Urbana, Illinois, and did not personally know what was actually done by family physicians or practitioners in those communities. Since Radecki admitted he was not familiar with the environs of Champaign and Urbana and knew no medical physicians in the area, the trial judge concluded that Radecki was assuming the general standard of care in the relevant community was the same standard that applied to him; and Radecki's opinion was merely a statement of what he personally would have done, and presented nothing more than an opinion which conflicted with that of defendant. The trial court opined that Radecki's deposition statements conflicted with statements in his affidavit as to the foundation for his opinion; and that the deposition statements, containing his actual words, must be taken as more reliable. The court concluded that there was no genuine issue as to material fact because the plaintiff had failed to present a sufficient foundation for the standard of care upon which his expert based his opinion.

We note that Radecki's modified affidavit also stated: (1) he is a board-certified surgeon associated with the medical college of Ohio and practicing in Toledo; (2) plaintiff's medical records showed he was admitted to a veteran's hospital 62 days after defendant had examined him, and a large carcinoma of the rectum was found; and (3) the lesion in the rectum could have been seen with a sigmoidoscope, and more readily by an adequate digital examination, while reliance on a simple anoscopic examination was not in keeping with good medical practice.

Plaintiff urges this court to abandon the locality rule entirely. First, plaintiff suggests that *Darling v. Charleston Community Me-*

*morial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, finding a hospital's standard of care not conclusively determined by what is done in other hospitals in the community, be extended to physicians. A similar argument was made in *Greenberg v. Michael Reese Hospital* (1980), 83 Ill. 2d 282, 291-94, 415 N.E.2d 390, 395-96. In *Greenberg*, the court stressed the diversity inherent in hospital administration as a reason that a broad range of evidence be available to establish the applicable standard of care; and further stated that (1) a modern hospital is an amalgam of many individuals, not all of whom are licensed medical practitioners' (2) at times a hospital functions far beyond the narrow sphere of medical practice; and (3) while various medical judgments are necessary as a daily part of hospital administration, they do not constitute the entirety of a hospital's function, as is the case with single medical practitioners. Neither *Darling* nor subsequent decisions of the Illinois Supreme Court suggest that the locality rule ought be abrogated entirely as it applies to physicians.

Second, plaintiff maintains that application of the "similar locality" rule is inconsistent with those cases dealing with "informed consent," *e.g., Green v. Hussey* (1970), 127 Ill. App. 2d 174, 262 N.E.2d 156, and *Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1, 452 N.E.2d 751. We disagree. As pointed out in the Comment to IPI Civil 2d No. 105.05, in performing an operation upon a patient, consent is necessary and must be obtained from someone legally authorized to consent for the patient (with exceptions for certain emergencies), or the doctor commits a battery; this basis of liability has nothing to do with the negligence action known as malpractice.

Third, plaintiff argues that public policy favors abrogation of the "similar locality" rule, and suggests there is a trend to establish national standards of care for medical practitioners. We note, however, that the Illinois legislature has recently formulated expert witness standards to apply in cases involving the standard of care given by a medical profession, as applicable to all cases filed on or after August 15, 1985. See Public Act 84—7, part 25 (Ill. Leg. Serv. No. 3, at 28 (1985), to be codified at Ill. Rev. Stat., ch. 110, par. 8—2501.

■ As the malpractice alleged was negligent diagnosis, on the facts expert testimony was required; this was not a situation wherein the common sense of laymen could supply the standard of care. Plaintiff argues, however, that the trial court erred in applying the locality rule so as to support summary judgment. The term "locality" has no precise meaning and varies with the facts of the particular case; and the locality which applies to a defendant should not be narrowed any further than is necessary to promote the rationale for the rule, which

has been regarded as based upon (1) the substantial difference in opportunities for continued medical education between rural and urban practitioners, and (2) the lack of medical research centers available to rural practitioners and transportation difficulties. See *Stogsdill v. Manor Convalescent Home, Inc.* (1976), 35 Ill. App. 3d 634; *Chamness v. Odum* (1979), 80 Ill. App. 3d 98; *Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457.

■ We agree that the trial court erred in granting summary judgment by applying an overly narrow interpretation of the locality rule. There was sufficient evidence of Radecki's familiarity with the standard of care in *similar* communities as to provide sufficient foundation for his opinion, so summary judgment should have been denied. Although Radecki deposed that he had never practiced in a clinic setting, or in a community that had a population of about 5,000, his modified affidavit stated that he was familiar with standards governing diagnosis of conditions similar to those presented by the plaintiff in communities with populations and medical facilities *comparable* to those existing in Champaign County, and particularly with large clinic practices having satellites in smaller communities such as Mahomet. Inasmuch as the defendant is associated with Carle Clinic, we see no reason to treat him differently, because this examination was performed in the Mahomet Clinic, than we would a physician associated with Carle Clinic and performing the examination in Urbana, Illinois. Radecki deposed that defendant ought to have performed or ordered a sigmoidoscope of the plaintiff in diagnosing the complaint of rectal bleeding, and that this is the standard diagnostic method taught in medical schools, listed in medical texts, and uniformly taught in medical internships. He disputed the adequacy of the defendant's digital rectal examination of the plaintiff. He deposed that the anoscope is not appropriately used as a tool in diagnosis, and said doctors are taught just the opposite as it could give a false sense of security to the diagnosis; and that the anoscope is appropriately used only in the therapeutic treatment of hemorrhoids, *e.g.*, for applying rubberbands on internal hemorrhoids. These statements raise material questions of fact for the trier of fact. Defendant was not entitled to summary judgment merely because Radecki stated that the standards for examination and diagnosis of rectal bleeding problems such as those presented by the plaintiff did not vary between communities, and responded affirmatively when asked whether this did not suggest a national standard. As this court stated in *Hunter v. Sukkar* (1982), 111 Ill. App. 3d 169, 176, 443 N.E.2d 774, 779, if only international, or national, standards exist for a medical treatment (in that case,

638

ASIF, a surgical technique), then there will be no variance in standards among communities.

We find *Bartimus* distinguishable. In that case plaintiff's expert admitted having no familiarity with medical practice in defendant's community *or* similar communities. Further, *Bartimus* dealt with an emergency room situation and plaintiff's expert in that case admitted he had never worked in the emergency room of a hospital where physicians are "on call" as had been the circumstances of the defendant.

Reversed and remanded.

GREEN, P.J., and MORTHLAND, J., concur.