DOROTHY DUVALL, Plaintiff-Appellant, v. JAMES M. LAIDLAW *et al.*, Defendants-Appellees.

Fourth District   No. 4—85—0392

Opinion filed March 13, 1986.

Donald A. Shapiro, of Donald A. Shapiro, Ltd., of Chicago, for appellant.

Todd M. Tennant, of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellees.

JUSTICE MORTHLAND delivered the opinion of the court:

The plaintiff appeals a Champaign County circuit court order granting summary judgment to the defendant physicians in this medical negligence action. We reverse and remand for trial.

On March 24, 1981, defendant physician James M. Laidlaw performed abdominal surgery on the plaintiff. Doctor Laidlaw released the plaintiff from the hospital on March 29, 1981, although records indicate she had a "low-grade" fever of 99 degrees Fahrenheit. The plaintiff apparently returned home to Dwight, a town approximately 125 miles from the hospital in Champaign where the surgery was performed.

The plaintiff returned to Champaign-Urbana on March 31, 1981, and Dr. Laidlaw examined her. The plaintiff had complained that her wound was draining. Dr. Laidlaw deposed that he opened the plaintiff's incision and drained fluid from the wound during this visit. The parties do not agree how much fluid was drained or what physical characteristics this fluid exhibited. Dr. Laidlaw did not have this fluid analyzed in a laboratory, did not prescribe antibiotics, and ordered no cultures or other tests. He did, however, suggest to the plaintiff that she apply honey to the wound to encourage healing.

On April 3, 1981, the plaintiff had a telephone conversation with Dr. Laidlaw. The substance of this telephone conversation is disputed, but apparently Duvall reported that the incision was still draining. The nature of this discharge and, equally important, the substance of the plaintiff's description of the wound drainage remains in dispute. Dr. Laidlaw did not see or speak to the plaintiff again until April 29, 1981, after she had been hospitalized for the infection which prompted this suit.

On April 6, 1981, and again on April 7, the plaintiff spoke by telephone with defendant physician Larry Lane. Dr. Lane was and is an associate of Dr. Laidlaw's at Christie Clinic in Champaign-Urbana. In response to the plaintiff's complaints of pain on April 6, Dr. Lane prescribed six tablets of a painkiller called Zomax. After further complaints during the April 7 telephone call, Dr. Lane prescribed Percodan, a more potent, narcotic, pain reliever, for the plaintiff.

On April 8, 1981, the day after Dr. Lane prescribed the Percodan, the plaintiff was admitted to St. James Hospital in Pontiac. At that time she suffered from an acute abdominal infection and pus was draining from her incision.

On October 22, 1982, the plaintiff filed a complaint in Champaign County circuit court alleging that Drs. Laidlaw and Lane had

been negligent in failing to diagnose and treat her post-operative infection promptly and in giving her advice over the telephone. This conduct allegedly breached the defendants' duty to treat the plaintiff with the degree of skill appropriate for "obstetrician-gynecologists practicing in the United States." The plaintiff filed an amended complaint and the two defendants answered on October 12, 1983.

On April 11, 1985, after the parties and the plaintiff's expert witness had been deposed, the defendants filed a motion for summary judgment. The defendants accompanied their motion with their affidavits which assert that the care they had deposed to giving the plaintiff conformed to the standard of care applicable in Champaign-Urbana. The defendants' motion also asserted that the plaintiff's expert, Dr. Charles C. Bird, was unfamiliar with the standard of care in Champaign-Urbana or similar communities and that he improperly relied upon a "national" standard of care in disagreeing with the treatment given to the plaintiff by the defendants.

The defendant Laidlaw is board-certified in obstetrics and gynecology in Canada and has practiced in the State of Illinois since 1962. Dr. Laidlaw's certification in Canada was transferred to the United States and he is, in addition, a fellow of the American College of Surgeons and the American College of Obstetrics and Gynecology. The defendant Lane is board-certified in the State of Illinois, specializing in obstetrics and gynecology. The plaintiff's expert, Dr. Charles C. Bird, is board-certified in obstetrics and gynecology and has practiced in and around Evanston for most of his career. In addition to his private practice, Dr. Bird lectures in obstetrics and gynecology as an assistant professor at Northwestern University Medical School.

In his deposition, Dr. Bird stated his belief that the defendants did not adhere to the proper standard of care in treating the plaintiff. Specifically, Dr. Bird pointed to Dr. Laidlaw's action in releasing the plaintiff from the hospital while she maintained a low-grade fever as well as his failure to run tests or administer antibiotics when the plaintiff returned on March 31 with wound drainage still present. Dr. Lane was negligent, the plaintiff's expert believes, in prescribing Percodan over the telephone.

Dr. Laidlaw conceded during his deposition that should clinical signs of infection be present in a wound, such as bloody or odorous discharge, further tests would be appropriate. However, Dr. Laidlaw disputed the plaintiff's claim that prior to his examination of her on March 31, the discharge from her wound was "pungent in smell, [and] it was sticky and off-color brownish."

In stating his opinion about the defendants' adherence to proper medical practice, Dr. Bird relied upon what he believed to be a national standard for determining proper conduct under these circumstances. Dr. Bird conceded that he had never been to Champaign-Urbana, nor did he personally know any physician practicing in those cities. Nevertheless, Dr. Bird stated he believed himself familiar with practice in smaller Illinois communities, such as Champaign-Urbana, through his contact with physicians practicing in similar cities at various professional meetings. In addition, the plaintiff's expert suggested that his role in educating physicians who might eventually practice in cities similar to Champaign-Urbana afforded him a basis for judging the performance of physicians in the defendants' circumstances.

On May 23, 1985, the circuit court entered summary judgment for the defendants on the basis that the plaintiff's expert was not competent to testify under the strictures of Illinois' "similar locality" rule. In this appeal, the plaintiff argues that her expert is competent to testify, thus, his deposition presents sufficient indication of a material issue of fact to withstand a motion for summary judgment. In addition, the plaintiff suggests that Dr. Laidlaw's own deposition testimony satisfactorily establishes a material issue of fact regarding his treatment of the plaintiff. Finally the plaintiff urges this court to overrule the "similar locality" rule for expert witnesses in medical negligence cases.

In medical malpractice cases, as in others, summary judgment should be granted only where no genuine issue remains as to any material fact. The court must make this determination from the affidavits, depositions, admissions, exhibits, and pleadings in the case. The court must construe the evidence strictly against the moving party and liberally in favor of the opponent. (*Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 434 N.E.2d 50.) An affidavit supporting or opposing a motion for summary judgment (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005), must indicate that the affiant would be competent to testify if called upon to do so. *Purtill v. Hess* (1986), 111 Ill. 2d 229.

In a medical negligence case, the plaintiff must prove the proper standard of care against which the defendant physician's conduct must be measured and a negligent failure to comply with this standard. The plaintiff must also prove that injury proximately resulted from the defendant's negligence. (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 381 N.E.2d 279; *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301.) Evidence concerning the standard of

care may come from the defendant. *Metz v. Fairbury Hospital* (1983), 118 Ill. App. 3d 1093, 455 N.E.2d 1096; *Anderson v. Martzke* (1970), 131 Ill. App. 2d 61, 266 N.E.2d 137.

■ In determining the appropriate standard of care, Illinois follows the "similar locality" rule. This rule requires physicians to possess and apply the knowledge, skill, and care which a reasonably well-qualified physician in the "same or similar community" would bring to a similar case. *Purtill v. Hess* (1986), 111 Ill. 2d 229; *Thompson v. Webb* (1985), 138 Ill. App. 3d 629, 486 N.E.2d 326.

■ Supreme Court Rule 191 (87 Ill. 2d R. 191) requires that an affidavit supporting or opposing a motion for summary judgment affirmatively establish an expert's qualifications and competency to testify. This foundation includes the fact that the expert is a licensed member of the school of medicine about which he proposes to express an opinion. (*Dolan v. Galluzzo* (1979), 77 Ill. 2d 279, 396 N.E.2d 13.) The expert must also demonstrate that he is:

"[F]amiliar with the methods, procedures, and treatments ordinarily observed by other physicians, in either the defendant physician's community or a similar community. [Citations.] Once the former requirement has been satisfied, 'it lies within the sound discretion of the trial court to determine if the witness is qualified [and competent] to [state his opinion] as an expert regarding the standard of care.' *Dolan v. Galluzzo* (1979), 77 Ill. 2d 279, 285." (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 243.)

This court has noted that the meaning of the term "locality" is not precise and varies with the facts of a particular case. Moreover, "the locality which applies to a defendant should not be narrowed any further than is necessary to promote the rationale for the rule ***." (*Thompson v. Webb* (1985), 138 Ill. App. 3d 629, 636, 486 N.E.2d 326, 330.) Specifically, medical facilities, specialists, and other special assistance may be present for an urban practitioner, but unavailable to the rural physician. "The physician's professional conduct must be judged in light of the conditions and facilities with which he must work. If a plaintiff's expert is familiar with the standards of care applicable to conditions and facilities available to the defendant doctor, then he is qualified to testify." (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 247.) Finally, if the standards upon which an expert bases his opinion are national or international in scope, familiarity with such standards permits the expert to testify competently notwithstanding his unfamiliarity with practice in a particular community. *Purtill v. Hess* (1986), 111 Ill. 2d 229; *Hunter v. Sukkar* (1982), 111 Ill. App.

3d 169, 443 N.E.2d 774.

■■ Under the foregoing authority, we conclude the trial court erred in granting summary judgment for the defendants. The plaintiff's expert based his opinions concerning the defendants' conduct on a standard which he stated to be uniform throughout the country. In addition, he suggested he had reason to believe that all obstetrician-gynecologists were made aware of these standards during their medical training. This foundation sufficed to show the competency of the expert's testimony for purposes of deciding a motion for summary judgment. In addition, Dr. Bird's questions concerning the defendants' conduct relate to their actions in treating the plaintiff rather than to the availability of specialized facilities or personnel. Accordingly, the "similar locality" rule was not implicated under the present circumstances.

In addition, Dr. Laidlaw's statement that odorous or discolored wound discharge would necessitate treatment adequately established the standard of care for purposes of summary judgment. Taken with the plaintiff's disputed assertion that such symptoms were present when the defendants examined her and counselled her by telephone, a triable issue of fact undoubtedly remains. This factual dispute is peculiarly suited for determination at trial, and summary judgment was clearly inappropriate.

In light of our disposition, we do not address the plaintiff's contention that the similar locality rule should be abolished in Illinois. However, we note that the Illinois Supreme Court squarely rejected this argument in *Purtill v. Hess* (1986), 111 Ill. 2d 229.

For the foregoing reasons, we reverse the judgment of the Champaign County circuit court and remand this cause for trial on the merits.

Reversed and remanded.

WEBBER and GREEN, JJ., concur.