STANISLAWA KOBIALKO, Plaintiff-Appellant, v. ENRIQUE LOPEZ, Defendant-Appellee.

First District (6th Division) No. 1—90—2634

Opinion filed June 28, 1991.

David S. Pochis, Ltd., and Alan D. Katz, both of Chicago (Andrew D. Synchef, of counsel), for appellant.

Bullaro, Carton & Stone, of Chicago (Steven M. Pontikes and James R. Branit, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Stanislawa Kobialko, appeals from an order granting summary judgment in favor of defendant, Dr. Enrique Lopez, a plastic surgeon, in a medical malpractice case. The sole issue on appeal is whether the trial court erred by granting defendant's motion *in limine* to bar plaintiff's expert witness, and consequently, entering summary judgment in favor of defendant.

The record sets forth the following undisputed facts. In April 1981, plaintiff consulted defendant seeking alteration for aesthetic purposes of her nose (rhinoplasty) and her eyelids (blepharoplasty), which surgery defendant performed on May 12, 1981. Following the operation, plaintiff complained to defendant about disfigurations which resulted from the surgery. Defendant subsequently performed two additional surgeries on February 15, 1982, and March 30, 1982, both of which allegedly failed to completely correct the disfigurations.

Plaintiff's complaint, filed on May 10, 1983, alleges that she suffered shock and damage to her nervous system and permanent disfigurement and facial scarring as a result of defendant's negligence. On July 10, 1990, the motion judge granted defendant's motion to bar plaintiff's expert, Dr. Igor Niechajev, from testifying on the ground that he was unqualified to testify as to the relevant standard of care. Although the judge offered plaintiff additional time to seek another expert, plaintiff chose to stand by the expertise of Dr. Niechajev rather than seek another expert witness. The trial court subsequently granted summary judgment in favor of defendant, and plaintiff appeals.

The discovery and evidence depositions of Dr. Niechajev taken on February 14, 1990, revealed the following about his relevant experience. Plaintiff contacted Dr. Niechajev through a friend for an expert medical opinion concerning her condition. Dr. Niechajev examined plaintiff in Chicago on July 27, 1983, and submitted his report. At the time of the depositions in 1990, Dr. Niechajev was a plastic surgeon who operated a "mini-hospital" in Stockholm, Sweden, performing surgical operations and procedures, 25% to 30% of which involved nose or eye surgery. The clinic consists of two, fully equipped operat-

ing rooms and three beds. From 1983 to 1985, Dr. Niechajev did two or three rhinoplasties and three or four blepharoplasties each month. Between 1985 and 1990, Dr. Niechajev did about 250 rhinoplasties or about 50 to 60 annually. He is associated with various professional associations, including the International Society for Esthetic Plastic Surgery, the Swedish Society of Plastic Surgery, the Scandinavian Society of Plastic Surgery and the Swedish Society of Hand Surgery.

After graduating from a Polish medical school in 1968, Dr. Niechajev did a three-year residency in Stockholm, Sweden. He became licensed in Sweden in 1972, and then did a six-month residency in plastic surgery at a Stockholm hospital. During this time, he assisted a supervising doctor in 5 to 10 rhinoplasties and 5 to 10 blepharoplasties. Although he did some "easier reconstructive procedures" during this period, he did not perform any rhinoplasties or blepharoplasties. In 1973, Dr. Niechajev came to the United States and did a one-year residency in general surgery at the University of Illinois Hospital, during which time he saw only a few plastic surgery cases. While working at the Cook County Hospital burn unit during this time, he saw about 10 cases of plastic and reconstructive surgery, several involving rhinoplasties. He assisted a supervising doctor and sutured lacerations during the operations.

During 1974 and 1975, Dr. Niechajev did a fellowship at Mount Sinai Hospital in Chicago under the instruction of Dr. Eugene Tanski, the head of the department of plastic and reconstructive surgery. During this time, Dr. Niechajev performed 10 to 15 rhinoplasties and 5 to 10 blepharoplasties. He also assisted Dr. Tanski with 15 to 20 rhinoplasties and 15 to 20 blepharoplasties. At Mount Sinai, he dealt with emergency cases of plastic and hand surgery, 10% of which involved eyes and nose. During this period, he assisted in about 200 operations, about 15 of which were rhinoplasties. He also performed 300 to 350 unassisted surgeries, 10 of which were rhinoplasties. He spent about 10 hours per week reading books on plastic and reconstructive surgery recommended by Dr. Tanski, and was quizzed weekly and evaluated from time to time by Dr. Tanski. He also supervised general surgery residents.

Dr. Niechajev returned to Stockholm in November 1975, and after seven more months of training, he became board certified in plastic and reconstructive surgery and later in hand surgery. As chief resident in plastic, reconstructive and hand surgery from 1976 to 1979 at Malmo General Hospital in Sweden, Dr. Niechajev assisted in 10 to 20 rhinoplasties and blepharoplasties. From 1978 to 1983, he was a microsurgery instructor of medical students. Microsurgery relates to the

extremities. During these years, Dr. Niechajev performed or assisted in between 10 to 15 rhinoplasties and 8 to 10 blephoraplasties. He also read pertinent articles and attended meetings in order to keep up on plastic surgery relating to the eyes and nose.

In 1988, he published a paper about surgical anatomy of the nose, and in 1989, his article, "External Incisions in Difficult Rhinoplasty," was published in a Swedish medical journal. He has also lectured on the anatomy of upper eyelids. Since 1975, he has subscribed to three medical journals of plastic surgery, two of which are American. In addition, he reads all important new books in the field. He attends four or five meetings annually of the International Society, whose members include surgeons from various United States cities, including Chicago, Los Angeles, New York and Miami.

In 1983, he was appointed assistant professor in the department of plastic and hand surgery at Sabbatsberg Hospital in Stockholm and also opened his own clinic, as previously discussed. From 1983 to 1985, he did two or three rhinoplasties and three or four blepharoplasties monthly. In 1983, Dr. Niechajev was accepted for a three-month post-graduate fellowship in esthetic plastic surgery with two well-known plastic surgeons at the University of Miami, Drs. Baker and Gordon. During this time, he assisted or operated together with Drs. Baker and Gordon on 50 rhinoplasties and 80 blepharoplasties. Dr. Niechajev testified that the standard for plastic surgery and the procedures used are the same in Illinois and in Sweden. He described the field as "an international community" with "tight contacts" between Sweden and the United States. He stated that most Swedish doctors go to the United States for one to two years to work with American colleagues. In addition, they attend four or five international conferences each year where they meet with American doctors. In Dr. Niechajev's opinion, defendant deviated from the standard of care and such deviation caused plaintiff's facial disfigurations.

After reviewing the evidence and discovery depositions of Dr. Niechajev, the motion judge granted defendant's motion *in limine,* and subsequently awarded summary judgment in favor of defendant.

Plaintiff contends on appeal that the evidence demonstrates that Dr. Niechajev was familiar with the standard of care in Chicago. In addition, plaintiff argues that an international standard of care exists for rhinoplasty and blepharoplasty and that Dr. Niechajev is familiar with that standard. Defendant responds that despite Dr. Niechajev's relevant experience and training after 1982, he lacked such knowledge during 1981 and 1982, the years during which defendant performed the surgeries at issue. Moreover, defendant maintains that Dr.

Niechajev failed to show familiarity with the standard of care observed by surgeons in Chicago or a similar locality. Finally, defendant contends that the supreme court's holding in *Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867, does not extend to an international standard.

 █ A plaintiff in a medical malpractice case must establish the standard of care against which the defendant doctor's conduct is to be measured. (*Petkus v. Girzadas* (1988), 177 Ill. App. 3d 323, 532 N.E.2d 333.) The expert who establishes the doctor's deviation must be both a licensed member of the school of medicine about which he opines and familiar with the ordinary methods, procedures and treatments of physicians in the actual or a similar community unless certain uniform standards apply regardless of locality or available conditions and facilities. (*Purtill v. Hess*, 111 Ill. 2d 229, 489 N.E.2d 867.) The *Purtill* court further stated that a doctor familiar with the national, uniform minimum standards rather than local, minimal nonspecialized standards is considered sufficiently knowledgeable of all localities. (*Purtill v. Hess*, 111 Ill. 2d 229, 489 N.E.2d 867.) The *Purtill* court encouraged a broad reading of the similar locality rule, recognizing the "relatively uniform standards for the education and the licensing of physicians." *Purtill*, 111 Ill. 2d at 246, 489 N.E.2d at 874.

We believe that the evidence here demonstrates that Dr. Niechajev was familiar with the standard of care applicable to defendant in this case. In addition, the evidence suggests that certain uniform standards existed despite differences in localities. Under either basis, the trial court erred in granting defendant's motion *in limine*.

Dr. Niechajev's deposition testimony persuades us that his relevant training and education rendered him sufficiently familiar with the standard of care applicable in both Chicago and in a similar locality, Stockholm. At the time of his depositions, Dr. Niechajev had been certified as a plastic surgeon in Sweden since 1979 and had been licensed to practice medicine in Illinois since 1974. Between 1983 and 1985, Dr. Niechajev performed between five and seven rhinoplasties and blepharoplasties in Sweden monthly; during a three-month plastic surgery fellowship in Florida in 1983, he assisted two renowned plastic surgeons with more than 100 rhinoplasties and blepharoplasties; between 1985 and 1990 Dr. Niechajev performed 50 to 60 rhinoplasties annually in Sweden. Although the doctor's experience prior to 1983 consisted primarily of assisting physicians in surgery, such experience was substantial. Indeed, in 1972 in Sweden, he assisted surgeons in between 5 and 10 rhinoplasties and blepharoplasties; in 1973 in Chicago, he assisted in 30 to 40 rhinoplasties and blepharoplasties

and performed about 10 rhinoplasties unassisted; from 1975 to 1979 in Sweden, he assisted in 10 to 20 rhinoplasties and blepharoplasties; from 1979 to 1983 in Sweden, he performed or assisted in 18 to 25 rhinoplasties and blepharoplasties. This extensive experience in surgery, particularly blepharoplasties and rhinoplasties, demonstrates Dr. Niechajev's familiarity with a Chicago standard at the time of these surgeries and with that applicable in Stockholm, a similar locality.

We find the following cases cited by plaintiff persuasive of his position that the "similar locality" rule applies here: *Slezak v. Girzadas* (1988), 167 Ill. App. 3d 1045, 522 N.E.2d 132; *Fultz v. Peart* (1986), 144 Ill. App. 3d 364, 494 N.E.2d 212; and *Thompson v. Webb* (1985), 138 Ill. App. 3d 629, 486 N.E.2d 326.

In *Slezak v. Girzadas*, plaintiff sued defendant, an orthopedic surgeon who practiced in Chicago, for his alleged malpractice in inserting a plate and screw device, known as a "Zimmer plate," into plaintiff's hip to repair a fracture. The trial court prohibited Dr. Laskin, a board-certified orthopedic surgeon who practiced in New York, from testifying as plaintiff's expert because of his unfamiliarity with local standards. This court reversed, finding that Dr. Laskin's familiarity with the proper techniques in New York applied equally to that in Illinois and that the Zimmer plate was used nationwide.

In *Thompson v. Webb*, this court reversed an order granting summary judgment to defendant doctor who practiced in Mahomet, Illinois, 10 miles from Champaign. This court found that the trial court had interpreted the similar locality rule too narrowly and that sufficient evidence was presented to show that plaintiff's expert, who practiced in Ohio, was sufficiently familiar with the standard of care in similar communities to provide an adequate foundation.

In *Fultz v. Peart*, defendant argued on appeal that plaintiff failed to present expert testimony from an expert who qualified under the similar locality rule. Defendant in *Fultz* practiced in southern Illinois; both experts practiced in St. Louis, Missouri. This court found the experts qualified because they practiced in metropolitan areas and were generally familiar with the standards of care in Illinois, although through contact with other professionals. In addition, the court relied on the fact that both experts testified that the disease at issue was not uncommon and that a national standard existed.

■ Relying on *Slezak*, *Thompson* and *Fultz*, we believe that Dr. Niechajev was sufficiently familiar with the standard of care in Chicago under the similar locality rule. Like the expert in *Fultz*, Dr. Niechajev maintained frequent contact with professionals in the United States. According to his deposition testimony, Dr. Niechajev attended

four or five conferences annually with American plastic surgery professionals and regularly read American medical journals. We believe that this continuous contact allowed Dr. Niechajev to be sufficiently familiar with the standard of care applicable to defendant's care of plaintiff in this case. In short, the evidence shows Dr. Niechajev's knowledge of the national, uniform minimum standard applicable in the United States. Moreover, Dr. Niechajev testified that the same procedures were used in Stockholm and Chicago. Further, as in *Fultz*, the procedures at issue here were not uncommon.

■ Application of the locality rule is particularly inappropriate here because it would not further the rule's purpose. The rule developed to protect the rural doctor when facilities, educational opportunities and an ability to travel caused a distinction between the care received in rural communities and urban centers. (*Cassady v. Hendrickson* (1985), 138 Ill. App. 3d 925, 486 N.E.2d 1329.) As the *Thompson* court noted, the locality rule applicable to a defendant "should not be narrowed any further than is necessary to promote the rationale." (*Thompson v. Webb*, 138 Ill. App. 3d at 636-37, 486 N.E.2d at 330.) In this case, defendant inappropriately attempts to employ the locality rule to defeat plaintiff's claim rather than as a method to shield a practitioner who has less opportunity for education or limited facilities.

Defendant maintains that Dr. Niechajev's post-1982 experience should not be considered because defendant's alleged negligent acts occurred in 1981 and 1982, relying on *Smith v. South Shore Hospital* (1989), 187 Ill. App. 3d 847, 543 N.E.2d 868, and *Hirn v. Edgewater Hospital* (1980), 86 Ill. App. 3d 939, 408 N.E.2d 970, in support of his position. Neither case, however, allows us to affirm the trial court.

In *Smith v. South Shore Hospital*, plaintiff sought to introduce into evidence the 1983 standards of the Joint Commission on Accreditation of Hospitals to establish the standard of care for administering a spinal anesthetic for a 1979 incident. This court found that although hospital licensing regulations may be substituted for expert testimony, these 1983 standards were not in effect on the date of the surgery and were, therefore, inapplicable to establish a standard of care for plaintiff's 1979 occurrence. *Smith* is distinguishable, however, because the standards for accreditation at issue in that case were specifically identified to the year 1983. Moreover, such licensing regulations, which are typically written and formal, may be revoked, replaced or amended annually. We believe these characteristics distinguish *Smith* and render it inapplicable here.

■■ Defendant contends that *Hirn v. Edgewater Hospital* stands for the proposition that the expert's familiarity must be for the relevant time period. This court affirmed the trial court's finding that plaintiff's expert failed to establish the applicable standard of care "because his testimony did not pertain to the accepted or customary medical standards *at that time or place,* but rather only to the standard followed by his medical institution." (Emphasis added.) (*Hirn,* 86 Ill. App. 3d at 948, 408 N.E.2d at 977.) Despite the quoted reference to "time," whether the expert's knowledge related to the appropriate time period was simply not an issue in *Hirn,* as defendant contends. Rather, this court found objectionable the expert's reference to the standard procedures in his own office, noting that plaintiff must do more than merely show that another doctor would have acted differently. Therefore, defendant's reliance on *Hirn* is misplaced. Moreover, as previously indicated, Dr. Niechajev had extensive experience before 1982 with rhinoplasties and blepharoplasties, and the record fails to indicate that the pertinent standard of care changed significantly from the years of Dr. Niechajev's earliest experience in the mid-1970's until his later experience.

In summary, we conclude that plaintiff adequately established a foundation to show that her expert was familiar with the practice in the same or similar community where defendant practiced. Moreover, because we so conclude, we need not decide whether an international standard exists or whether *Purtill* would extend to such standard.

For the foregoing reasons, the orders of the circuit court of Cook County granting defendant's motion *in limine* and summary judgment are reversed, and the cause is remanded for further proceedings consistent with this opinion.

Orders reversed and remanded.

EGAN and LaPORTA, JJ., concur.